HON. ISAAC F. REDFIELD, } ASSISTANT JUDGES.
HON. PIERPOINT ISHAM,

---

### JONATHAN A. POPE *v.* HYREN HENRY AND OTHERS.

*Deeds. Parol license. Co-tenants. Statute of limitations. Grantor and grantee.*

The registry of a defective deed is constructive notice to no one.

Where one, in faith of a license, enters and occupies for more than fifteen years, as his own, this will give him an equity against the whole world, to be reimbursed for the value of his erections, to the person taking them, before he could be deprived of them.

Possessions taken under a license to occupy permanently, either absolutely, or upon certain conditions, gives, in equity, a title to the premises, according to the terms of the license.

Pope *v.* Henry et al.

And the party being in possession under the license, is notice to a subsequent purchaser, or incumbrancer of whatever title, the one in possession may have, whether legal or equitable.

The *going* into possession of land, under a parol gift, and remaining quietly in possession for fifteen years, gives good title, by the mere acquiescence of the donor or owner, whoever he may be.

A partition between co-tenants, made and acquiesced in for more than fifteen years, becomes absolutely perfect at law, and if it were not so, a court of equity would decree its perfection.

Any title subsequently acquired, by the grantor, who conveys by warranty, will inure to the benefit of the grantee. But grants made by the grantor, or conditions, or limitations, or estoppels subsequently attempted to be annexed to the estate, will not affect his grantee.

APPEAL from the court of chancery. The court of chancery decreed that the bill be dismissed, and that the defendants therein, respectively recover their costs. From this decree the orator appealed.

Bill alledges the indebtedness of the Gneiss Bottom Manufacturing Company, to the assignors of the orator, and that said Company executed to them, a mortgage of certain land in Weathersfield, on the 22d day of September, 1829; the company name altered to the Perkinsville Manufacturing Company; the estate conveyed by the guardian of certain infants, to the company, and by them mortgaged back to secure certain sums of money, as aforesaid.

That on the 14th day of September, 1836, the Perkinsville Manufacturing Company, being indebted to Daniel Denney and George D. Dutton, in a certain account, executed a note, and mortgaged land to secure the same. Dutton conveyed to Denney, and Denney purchased the mortgage to said guardian,—on the 18th of January, 1842, took an assignment of the same. That said Denney brought a bill, setting forth the same mortgages herein before set forth, and praying foreclosure upon them, and obtained a decree, November term, 1842, for over $13,000, and interest and costs to be paid by the first day of February, thereafter, which became absolute; and Denney, for $6,600, conveyed the premises to the orator.

Alledging that defendants all claim an interest in the premises, by liens accruing subsequent to orator's title.

Answer of Hyren Henry.—Admits the organization and the alteration of the name of the company, and that the land had been conveyed to the company by James H. Perkins, guardian, and does not know in regard to the indebtedness; denies the proper execution of the deed by the company,—is not properly drawn; Daniel Denney claimed some title, but what, does not know; knows nothing of the company being indebted to Denney & Dutton, or of the mortgage; denies the proper execution of the deed, as that of the company, or of the president; refers to the deed of assignment to the orator; admits the forclosure without appearance.

The company owned the premises described, and that a high bank on the west side of the river was wearing away, and they agreed with defendant, early in 1832, if he would erect a suitable bank-wall to protect said bank, he might have the right of using and conveying the waste water to his own building, and they would convey to him the title to the same; and that he did the work in faith of such title; and has been to great expense and trouble in the premises; and has erected a building for the purpose of using the waste water; and has used the aqueduct ever since; and had no doubt they had the right to convey it to him; a public highway is now laid over this, defendant's aqueduct; the stock of the company, subsequent to 1832, and prior to 1839, was conveyed to other stockholders than those who owned it at the time of the making of the aqueduct; that they claimed rent of him, and he took, under protest, a perpetual lease of the same, at the yearly rent of twelve dollars, which lease was recorded in March, 1839; and he quit-claimed all his title to the premises.

The answer of L. Cheney.—Does not claim any interest in any portion of the premises, except a certain piece by metes and bounds; one Edmun Durrin had owned one portion of the premises described, and the Perkinsville Manufacturing Company owned the other half; Durrin conveyed his portion to one Dunbar & Haven.

That in September, 1832, the company properly authorized their president, to convey to Dunbar & Haven, a certain piece of land, (twenty-six rods of land,) and the deed was properly executed,— consideration, one hundred dollars, and believes the consideration was the conveyance to the company of their interest in another portion of the premises; the 18th of March, 1834, Haven released his right to Dunbar; Dunbar built a house, and conveyed it to

this defendant for $800.00 consideration, to secure the payment of a certain note, and that note still unpaid; and these lands included in the mortgages set forth in plaintiff's bill; and claims that the mortgages so set forth, were not properly executed.

Answer of Lucretia Stone.— Does not claim any interest in the land, except a certain portion described by metes and bounds Buckminster White was the owner of one undivided half of the premises, the 30th day of March, 1830, and on that day, he and the company, the other co-tenant, made a division or separation, and executed mutual releases; White conveyed to one Nelson Grout, and Grout conveyed to one Ezekiel Cram; and says there was no deed on record conveying these lands to either of these companies; the guardian, or Perkins' heirs' deed was not put on record until the 14th day of June, 1832, long after the purchase of those under whom this defendant claims; Cram took immediate possession, and so continued in possession until he sold and deeded to Robert B. Cram; Robert B. Cram then took possession, and so continued until 1842; and this defendant furnished the money to pay for these premises, and took security by way of mortgage upon the premises, conditioned for defendant's support; and denies all knowledge of the mortgage, or of any claim in the Perkinsville Manufacturing Company; her mortgage foreclosed, and is older and better than plaintiff's claim, and plaintiff's title is wholly informal and inoperative.

Most of the evidence in the case, consists of admissions, by the parties, taken down by the master. It appeared, that the first mortgage set forth in the orator's bill, dated the 22d day of September, 1829, was not executed in conformity with the statute then in force. The second mortgage, dated the 14th day of September, 1836, purported to have been executed by vote of the directors, and recites no vote of the corporation. And it also appeared, that the second mortgage was subsequent in time, to the accruing of the several titles of the defendants. The facts decisive of the case, sufficiently appear in the opinion of the court.

*H. E. Stoughton* and *E. Hutchinson* for orator.

*Washburn & Marsh* for defendant Henry.

*W. M. Pingrey* for defendants Stone and Cheney.

This case was heard, at the regular March Term, in Windsor county, and held under consideration, until the present time.

The opinion of the court was delivered by

REDFIELD, J.  This is a bill brought in favor of a second assignee, (after one foreclosure,) to foreclose two certain mortgages against certain persons, not included in the former bill and decree. A very great number of important questions are raised upon both sides, which the court have not deemed it important to consider, there being other questions, which are decisive of the rights of the parties.

The first mortgage, which dates as far back as September, 1829, not having been executed, according to the statute then in force, as is obvious, and admitted on all hands, was not entitled to registry, and by consequence was not constructive notice to the defendants.  *Isham Admr.* v. *Bennington Iron Co.,* 19 Vt. 230.

The second mortgage is subsequent in time, to the accruing of the several titles of the defendants, bearing date in 1836.  But this deed, as it was executed in pursuance of a vote of the directors only, and not of any vote of the corporation itself, it would seem questionable how far it can be made to come up to the requisitions of the statute then in force.

Without saying more, in regard to the title of the plaintiff, we proceed to an examination of the title of the several defendants, each of which stands upon peculiar grounds.

In regard to that of defendant Henry, it originated in a mere license to take water, by some kind of duct, sufficient to carry certain machinery, which in faith of the license he subsequently erected, and had continued to occupy as his own, for more than fifteen years before the bringing of the bill.  This we think gives him an equity against all the world, to be reimbursed for the value of his erections, to the person taking them, before he could be deprived of them.  It is one of the first principles of the Roman civil law, in regard to the title of real estate and valuable erections, and meliorations, as they were called, put thereon by the occupier, in faith of a title, which subsequently failed for any cause, that one thus benefitted by the labor of another, should make reasonable compensation.

And this same principle has been very early incorporated into the English chancery law.  This right clearly exists in Henry, without regard to his ultimate title.

A very thorough discussion of this whole subject, which would be out of place here, will be found in the 2 Vol. American Jurist, p. 294–314.

But we think the title of Henry, according to the terms of the original contract, whatever it was, unless abandoned by the lease, which he accepted in 1839, must be considered good upon two grounds.

1. Possession taken under a license to occupy permanently either absolutely or upon certain conditions, gives in equity, a title to the premises, according to the terms of the license. And this contract being partly performed, or fully performed on one part, by permanent erections of considerable value, a court of equity will decree an assurance of the title stipulated.

And the party being in possession under the license, is notice to a subsequent purchaser or incumbrancer, of whatever title the one in possession may have, whether legal or equitable.

2. So too, one going into the possession of land under a parol gift, and remaining quietly in possession for fifteen years, acquires good title by the mere acquiescence of the donor or owner, whoever he may be. And the possession is regarded as quiet, unless interrupted by a forcible ouster, or legal proceedings for that purpose. These propositions are sufficiently established and explained in *Hall* v. *Chaffee*, 13 Vt. 150. *Rublee* v. *Mead*, 2 Vt. 544.

3. The accepting of a lease of the corporation, at a date subsequent to the mortgage of 1836, if that is to be regarded as a properly registered mortgage, (which is certainly very questionable,) it has been urged would so merge the prior equity of Henry, as to postpone it to the mortgage. But it seems to us, this is giving the mergee an effect which the parties did not contemplate, and which is clearly at variance with their equitable rights. And such effect will not be allowed to follow from a mergee of title, unless it becomes absolutely indispensable. Thus it has often been decided, that taking a release of the equity of redemption by the first mortgagor, will not so merge the first mortgage, as to postpone it to a subsequent mortgage. This lease, in strictness must be regarded as having superseded the license, but we think it ought to be regarded, as merely a further assurance of title, like the perfecting of a defective conveyance, and that the title in equity must be re-

Pope *v.* Henry et al.

garded as taking date from the time of the entry, the same as if Henry had resorted to a court of equity to perfect his title, instead of effecting it by arrangement with the party. If this conveyance had been decreed, it would have been so regarded, although in fact, made after the date of an intervening incumbrance.

The title of Cheney and Mrs. Stone, it seems to us, stand substantially, upon the same legal basis.

There was an attempt at partition, between the co-tenants, more than fifteen years before the institution of this suit. The conveyance of the co-tenants, under whom these defendants derived title, was formal and valid, and the company have availed themselves of that portion of the premises, and it has gone for their benefit, and upon these same mortgages, it would seem.

And during all this long time of more than the term of the statute of limitations, the company and the mortgagees have acquiesced in this partition. And in faith of it, the defendants, and those under whom they claim, have, from time to time, continued to make valuable erections.

Under these circumstances, a court of equity would not lend its aid to the company, to foreclose the title of the co-tenants, or to the mortgagees to do it by reason of any defect in their conveyances, by which they hold, even if the title had not become perfected, by lapse of time, unless they first procured a release of the title acquired by the conveyance to them, and also offered to reimburse the expense incurred in improvements, nothing of which is done in the present case.

And in addition to all this, it seems to us very clear, that this partition having been acquiesced in for more than fifteen years, has become absolutely perfect at law, and if it were not so, a court of equity would decree its perfection.

In every view we have been able to take of this case, it seems to us to stand upon no sufficient grounds of equity, and the decree of the chancellor dismissing the bill with costs, as to all the defendants, is affirmed.

The vote of the company to make partition with Dunbar & Haven, as recited in the deed of Bond, the president is the first day of September, 1832, although the deed was not actually executed until the 30th day of September, 1833. Still it must be regarded as an acquiescence in the partition from the date of the vote.

Mrs. Stone's mortgage is dated as early as December, 1832, and the land had been occupied for many years before in severalty, claiming an absolute title, against the world. This is a sufficient ouster of a co-tenant even. , And during all this time there has been an acquiescence in a partition in fact.

The deed to Robert Cram, dated in 1839, if accepted by him, could not affect the prior title by the mortgage deed in Mrs. Stone. The grantee is affected by all existing estoppels in the deed, the same as his grantor would be at that time. And especially is this true of deeds upon the registry.

But it is no more competent for the grantor to affect his grantee by estoppels subsequently created, than by deeds of the same land to others, by the same grantor. Any title subsequently acquired, by the grantor, who conveys by warranty, will inure to the benefit of the grantee. But grants made by the grantor, or conditions, or limitations, or estoppels subsequently attempted to be annexed to the estate, will not affect his grantee.