MICHAEL QUINN v. WILLIAM H. VALIQUETTE.

Special Term at Rutland, November, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed January 16, 1908.

*Equity Pleading—Construction—Information and Belief—Conclusions—Fraud—Allegations of Fact and Evidence—Landlord and Tenant—Lease—Extensions—Difference Between Covenant for Renewal of Lease and Extension of Term—Equity—Quieting Title—Entertainment of Suit—Discretion of Court—Remedy at Law.*

A bill in chancery does not sufficiently charge that a transaction is faudulent by merely characterizing it as fraudulent, without alleging that which makes it such.

A demurrer to a bill in chancery does not admit what the bill merely alleges the orator is informed and believes.

Nothing can work an equitable estoppel, unless it appears that it was relied upon.

In order that a person be estopped by an inquiry as to his right or interest in property, it must appear that he knew the purpose of the inquiry, whether the person making the inquiry had such an interest as entitled him to make it, and that the answer would be relied upon.

On demurrer to a bill in chancery, an extension of a lease purporting to have been executed March 15, and acknowledged March 16, there being no allegation that it was not executed when it purports to have been, cannot be taken to have been executed after the adjudication of insanity of the lessors, which was on March 26, though the bill alleges that, in answer to a letter of inquiry, a letter, dated March 28, was received from defendant to the effect that an agreement for a new lease had not then been signed, the letter so pleaded being only evidence and so not admitted by the demurrer.

There is a material difference between a covenant for the renewal of a lease and one for an extension of the term at the option of the

lessee. The former is a mere executory contract for a lease there-
after to be executed. The latter makes the lease, at the option
of the lessee, a present demise for the combined periods of the
term certain and its agreed extension.

Where a lease for ten years provides for an extension of the term for
ten years at the option of the lessee, it amounts to a lease for
twenty years, at the option of the lessee, and his mere holding
over after the expiration of the first ten years is a sufficient exer-
cise of that option; so that it is immaterial whether the lessors
were insane when they later gave the lessee a written extension
for ten years.

The rule for the construction of equity pleadings is, that their language
shall be understood according to its natural import in connection
with the subject-matter; that in equipoise the construction is to
be against the pleader; and that no intendments are to be made
in favor of the pleader that do not naturally result from the facts
alleged.

Under the above rule, on demurrer to a bill in chancery to set aside
an extension of a lease for that the lessors were insane when they
executed the extension, the lease will be taken to have provided
for an extension of the term, rather than a renewal of the lease;
the bill alleging only that on March 26, 1906, when the lessors were
adjudged insane and their guardian appointed, defendant lessee
was in possession of the premises after expiration of the original
lease, and had not vacated them nor surrendered possession to the
lessors; that defendant was then occupying them as a hotel, and
continued so to occupy them by a manager, servants, and agents;
that orator bargained for the premises in the following October,
before which he made inquiry thereon and learned that defendant
had held over under the lease, and was paying rent by the month;
that a written extension, dated March 15, 1906, was in the words,
"we hereby agree to extend the within lease for a further term
of ten years from Jan. 1, 1906, to Jan. 1, 1916"; that such writing
purports to be an extension of an original lease duly recorded;
and that the orator understands that it is written on the lease to
defendant terminating January 1, 1906.

Possession of real estate is notice to the world of whatever title, legal
or equitable, the one in possession may have.

The relation between the tenant of demised premises and the grantee
of the reversion is that of landlord and tenant, with all the

rights and remedies incident to that relation, regardless of attornment; and such grantee is entitled to all rent accruing after his conveyance and not paid to his grantor in default of notice.

A bill in equity to remove a cloud from the title to real estate is addressed to the discretion of the court, which is to be governed as far as possible by general rules and principles, but still grants or withholds relief according to the circumstances of the particular case when such rules and principles furnish no certain measure of justice between the parties.

A court of equity will not entertain a suit by the grantee of demised premises to remove, as a cloud on the title, the grantors' extension of the lease, where no fraud is sufficiently alleged, and the case presented is essentially that of a landlord seeking to remove from his legal title the cloud of his tenant's lease, terminating in eight years by its own limitation, and there being no general rules and principles affording a certain measure of justice between the parties, no danger from delay, as an action at law can be commenced at once, and no other ingredient being shown that requires the effective powers of equity to prevent fraud and injustice.

APPEAL IN CHANCERY. Heard on demurrer to the bill at the March Term, 1907, Rutland County, *Waterman,* J., presiding. Demurrer overruled; bill taken as confessed; and decree, *pro forma,* for the orator, according to the prayer of the bill, for possession of the premises in question, and for an accounting. The defendant appealed.

This is a bill in chancery to avoid and set aside an extension of a lease of the Berwick House property in the city of Rutland, for that the lessors were insane when they executed the extension.

The bill alleges that before and on February 28, 1906, Harriet L. Richardson and Fred H. Richardson, her son, were the owners of said property, a large part of which was occupied for hotel purposes; that on March 26, 1906, on application dated the 16th of said March, filed in the probate court the 19th, notice thereof having been duly served on said Richardsons, said court adjudged them insane, and mentally incapable of taking care of themselves and their property, and appointed

Homer L. Hoag of said city their guardian, who thereupon accepted the trust, and entered upon the duties thereof; that at the time of said appointment the defendant was in possession of said premises after the expiration of a written lease thereof under seal for a term of ten years, terminating on January 1, 1906, and had not vacated the same, nor surrendered possession thereof to said Richardsons, who were his lessors; that at said time the defendant operated said hotel property, and continued to operate it by a manager, servants, and agents, and spent, and still spends, a large part of his time in New York City, engaged in other business, and leaves the operation of said property in the hands of such manager, servants, and agents, without proper care and supervision, returning to the city of Rutland only occasionally.

The bill further alleges that at the time of the appointment of said guardian, and for six months or more prior thereto, the orator is advised and believes that said Richardsons were insane, and wholly incompetent to transact any business and to comprehend and understand any business transaction, and that the mother was controlled and dominated by the son, and that both were easily influenced and dominated by others, all which the defendant well knew; that immediately after his appointment, the guardian went to said premises, and interviewed the manager thereof, to ascertain as best he could the true contract, if any there was, and the claims, under which the defendant was holding possession of said premises; that being unable to get any satisfactory information upon the subject, he wrote to the defendant at New York for information, and received from him by due course of mail a letter, dated March 28, 1906, reading as follows: "Your letter of the 27th inst. is at hand. There is an agreement with Mr. Richardson as to terms of a new lease, which has not been signed, owing to the fact that it was thought best by Mr. Coolidge to wait until a guardian was appointed"; that afterwards, on the 16th of October, 1906, the guardian obtained a license to sell all of the real estate of his wards, and thereupon, on the same day, relying on said letter and such other information as he was able to get on the premises, he bargained and sold said property to the orator for a large sum of money, which he paid, and that afterwards, on the 5th day of November, 1906, the guardian executed and delivered to the orator a deed of said property, free and clear of all incumbrances

except the mortgages thereon, which the orator assumed and paid, which said deed the orator caused to be recorded the 6th day of said November; and said deed is referred to, and made a part of the bill.

The bill further alleges that before the orator bought said premises as aforesaid, seeing them occupied by the defendant, his manager and servants, he applied thereon to the servants and agents, and to the guardian, to ascertain under what agreement, contract, or claim the defendant, his servants and agents, were then possessing, occupying, and holding said premises, and that he ascertained that the defendant had held over under a lease that terminated January 1, 1906, and was paying rent therefor by the month, and that he could obtain possession thereof on a month's notice to quit, and that there was then in existence no written lease of the premises; that upon applying to the guardian, he presented to the orator the defendant's letter; and that thereupon, relying upon the representations therein, he made said purchase and paid the consideration thereof.

The bill further alleges that on the 19th of said October, at 1 o'clock and 40 minutes in the afternoon, as the orator is advised and believes, the defendant left for record at the city clerk's office in the city of Rutland, a writing, purporting to be dated March 15, 1906, and to be signed and sealed by the defendant and the Richardsons in the presence of two witnesses, and to have been acknowledged by them at said city on the 16th of said March, before a notary public, the body of which said writing is in the words and figures following: ''We hereby agree to extend the within lease according to its terms for a further period of ten years from January 1, 1906, to January 1, 1916''; that said writing was duly recorded in the land records of the city of Rutland, and purports to be an extension of an original lease duly recorded in said land records, and that the orator understands that said writing is written on, and attached to, the lease between the defendant and the Richardsons, terminating January 1, 1906, and that the defendant now pretends and claims that said writing operates as an extension of the term of said lease for ten years, and claims to hold possession of said premises by virtue thereof; that said pretended extension, if the same was ever executed by the Richardsons, was procured by the defendant by fraud and undue influence, and

that the signatures thereto are not their signatures, made of their own free will, and that at the time said writing purports to have been executed, they were wholly incompetent to make a valid contract of that character, and that said writing was and is void, and ought to be set aside; that said pretended extension and said lease, together constitute an incumbrance on the title of said property, and are being used and insisted upon as a right of possession and control thereof by the defendant; that up to about the time of the record of his said deed, the orator had no knowledge nor information of said extension, nor of the claim as now made by the defendant, but relied upon the defendant's letter that there was no written extension of said lease nor completed contract in respect thereto; that on November 19, 1906, the orator notified the defendant to quit and surrender possession on January 1, 1907, which the defendant refused to do, and still holds possession; and that the orator further notified the defendant that the value to him of the use of said premises is $800 a month, which the defendant refuses to pay.

The bill further alleges that the rent reserved in said lease is entirely inadequate for the use of said property, and that the orator is being deprived of fair and adequate returns for such use by reason of the fraudulent conduct of the defendant aforesaid; that said property is very valuable, and consists of buildings and hotel property that rapidly depreciates in value, and requires careful and adequate care, which it is not receiving at the hands of the defendant; and that by reason of the defendant's possession, the orator is prevented from using said property, and carrying on the hotel business thereon, and receiving the profits that might and would result therefrom.

The bill is demurred to for want of equity; for want of sufficient privity between the orator and the Richardsons; for want of showing that the consideration for said extension was not adequate and beneficial to the Richardsons; for want of showing fraud on the part of the defendant in procuring said extension; and for that the orator has an adequate remedy at law.

*Butler & Moloney* for the orator.

The guardian's deed to the orator was a repudiation of the contract of extension, if that was signed by the Richardsons; as the guardian was privy in representation, and the contract of extension voidable because of insanity. *Breckenridge* v. *Ormsby,* 19 Am. Dec. 71; *Jackson* v. *Burchin,* 14 Johns. 127; 22 Cyc. p. 1174,—1210*; *Hunt* v. *Robitory,* 84 Am. St. 563; *Valpey* v. *Rea,* 130 Mass. 384*; *Clay* v. *Hammond,* 93 Am. St. Rep. 147; *Hanna* v. *Read,* 40 Am. Rep. 608; *Hovey* v. *Hobson,* 89 Am. Dec. 704; *Carrier* v. *Sears,* 4 Allen 336.

Where one deals with a *non compos,* or a person wholly incompetent to contract or "understand the force and effect of any business transaction" the law "presumes fraud from the condition of the parties." *Sprinkle* v. *Wellborn,* 111 Am. St. 827; *Walker* v. *Winn,* 110 Am. St. Rep. 50; *Flack* v. *Gottscholtz & Co.,* 71 Am. Dec. 425, and note; *Lincoln* v. *Buckmaster,* 32 Vt. 652; *Van Deusen* v. *Sweet,* 51 N. Y. 378; *Hosler* v. *Beard,* 56 Am. St. Rep. 720.

The defendant is estopped from now claiming that the pretended extension of lease was genuine or binding when the orator has been led to believe that the agreement had not been signed, and has relied on the representation that no such contract had been signed in answer to an inquiry by the guardian. *Town of Grand Isle* v. *Kinney,* 70 Vt. 381; *N. E. Ins. Co.* v. *Haynes,* 71 Vt. 306; *Louks* v. *Kenniston,* 50 Vt. 116; *Green* v. *Smith,* 57 Vt. 268; *Earl* v. *Stevens,* 57 Vt. 474; *Wells* v. *Austin,* 59 Vt. 157; *Spiller* v. *Scribner,* 36 Vt. 245; *Holloran* v. *Whitney,* 43 Vt. 306.

*O. M. Barber* for the defendant.

In respect of the right to disaffirm, the law seems to be that "the grants of infants and of persons *non compos mentis* are parallel both in law and reason," and can be avoided only by such persons, or their privies in blood, and not by privies in estate. *Lincoln* v. *Buckmaster,* 32 Vt. 652; *Hull* v. *Louth* (Ind.), 58 Am. St. Rep. 405; *Mansfield* v. *Gordon,* 144 Mass. 168; *Austin* v. *Seminary,* 8 Met. 196.

The right to disaffirm is for the personal protection of the insane. 2 Page on Contracts, §899; *Riley* v. *Carter,* 19 L. R. A. 489; *Atwell* v. *Jenkins,* 163 Mass. 362; *Ingraham* v. *Baldwin,*

9 N. Y. 45; *Bensell* v. *Chancellor,* 34 Am. Dec. 561; *Allen* v. *Berryhill,* 1 Am. St. Rep. 309; *Ætna Life Ins. Co.* v. *Sellen* (Ind.), 77 Am. St. Rep. 481; *Carrier* v. *Sears,* 4 Allen 336.

If the deed to the orator is a disaffirmance of the contract of extension, he cannot rely on that disaffirmance, as that right is personal. 16 Am. & Eng. Enc. 629; 2 Page on Contracts, §899. The court of equity is without jurisdiction here, as an action of ejectment will give the orator a complete remedy, if he is entitled to any. 4 Pomeroy's Eq. Jur. 2753; 6 Pomeroy's Eq. Jur. 1222; *Rooney* v. *Soule,* 45 Vt. 303; *Munson* v. *Munson,* 28 Conn. 582; *Russell* v. *Barstow,* 144 Mass. 130; *Spofford* v. *Railroad Co.,* 66 Me. 51; 6 Am. & Eng. Enc. 159.

ROWELL, C. J. There is no sufficient allegation that the defendant procured the extension of the lease by fraud, for it is not enough to characterize a thing as fraudulent, without alleging that which makes it fraudulent, and there is no such allegation.

Nor is there a sufficient allegation that the defendant knew before and at the time the guardian was appointed that the Richardsons were insane; for that allegation is a part of an allegation of the orator's information and belief that they were then insane and that the orator knew it, without alleging the fact of such insanity and knowledge, based upon that information and belief. *Watkins* v. *Childs,* 80 Vt. 99, 106.

There is in another connection a sufficient allegation that the Richardsons were insane when they executed the extension, but there is no allegation that the defendant knew it.

No notice need be taken, as affording matter of estoppel, of what the bill alleges that the orator was informed when he inquired on the premises, for it is not alleged that he relied upon that information. But it is claimed that the defendant is estopped by his letter to the guardian from now setting up the extension of the lease as genuine and binding, since the orator was thereby led to believe that the extension had not been signed, and relied and acted upon the statement therein to that effect. But here is no estoppel, not even as to the guardian, much less as to the orator, for it is not alleged that the guardian informed the defendant of his appointment, nor of the purpose of his inquiry, nor that the defendant's answer would be relied upon, all which the defendant would have to know in order to be

estopped. *Hackett* v. *Callender,* 32 Vt. 97; *Durant* v. *Pratt,* 55 Vt. 270; *Wheeler* v. *Campbell,* 68 Vt. 98, 34 Atl. 35.

It is further claimed that as the defendant's letter is dated March 28, and says that the agreement for a new lease had not then been signed, it must be taken that the extension was executed after the adjudication of insanity and the appointment of the guardian, which was March 26, and that therefore the extension is void, and not merely voidable. But it can not be so taken, for the extension purports to have been executed the 15th of said March, and acknowledged the 16th, and there is no allegation that such is not the fact, unless it is contained in the defendant's letter. But that, as pleaded, is no allegation of anything, but only evidence. Hence it must be held that the extension was executed and acknowledged when it purports to have been.

But if it is to be taken that the lease provided for an extension of the term as distinguished from a renewal of the lease, it is immaterial when the written extension was executed, or whether the Richardsons were insane or not when they executed it, for then that part of the contract of the lease was executed and not executory, and made the term originally, not merely ten years, but twenty years, at the option of the defendant; and his holding over as he did was a sufficient exercise of that option, without other notice of his election, as the lease would require no other; and when he thus exercised his option, he was in as of the original term, and so the written extension would be immaterial, and there is no allegation nor claim that the Richardsons were insane when they executed the original lease.

As to how the original lease is to be taken in this regard depends on what can be gathered from the bill, from which we learn that on March 26, 1906, when the adjudication of insanity was made and the guardian appointed, the defendant was in possession of the premises after the expiration of said original lease, and had not vacated the same, nor surrendered possession thereof to the Richardsons; that at that time the defendant was occupying said premises as a hotel, and continued thus to occupy them by a manager, servants, and agents; that the orator bargained for said premises on October 16, 1906, before which, seeing them occupied by the defendant as aforesaid, he applied thereon and ascertained that the defendant had held over under said lease, and was paying rent by the month; that the language

of said written extension is, "We hereby agree to extend the within lease for a further term of ten years from Jan. 1, 1906, to Jan. 1, 1916"; that this writing purports to be an extension of an original lease duly recorded in the land records of the city of Rutland; and that the orator understands that the same is written on, and attached to, the lease between the Richardsons and the defendant, terminating January 1, 1906. This is all there is in the bill that throws light on whether the original lease provided for an extension of the term or a renewal of the lease.

The rule for the construction of equity pleadings is, that their language is to be understood according to its natural import in connection with the subject-matter; that in equipoise, the construction is to be against the pleader; and that no intendments are to be made in favor of the pleader that do not naturally result from the facts alleged. Story's Eq. Pl., Redf. ed., §452a. Construing the bill according to this rule, it must be taken that the original lease provided for an extension of the term rather than for a renewal of the lease. That there is a material difference between a covenant for a renewal of the lease and one for an extension of the term, is very generally held. But in construing such covenants, the cases differ somewhat in determining to which class they belong.

*Ranlet* v. *Cook*, 44 N. H. 512, 84 Am. Dec. 92, is a leading case on this subject. There a lease for ten years, with a proviso for renewal for ten years longer on certain terms, was held to be equivalent to extending the lease for that time, and so a sufficient lease for twenty years. The law of this case is not criticised, taking the covenant as construed; but the construction of it is criticised, as failing to note the difference in meaning between *renew* and *extend;* one meaning, to make over; to reestablish; to rebuild; the other, to prolong; to lengthen out. *Kollock* v. *Scribner*, 98 Wis. 104, 110. On the other hand that construction was approved in *Insurance &c. Co.* v. *Bank Missouri*, 71 Mo. 58. That was an action for rent. The lease, which was for a term of years, contained a covenant for the payment of double rent for every day the defendant held over after the expiration of the term, with a further covenant that after such expiration the defendant should have the privilege of renewal for a further definite term at the same rent as that reserved for the first term. The defendant held over for a number of years,

paying rent at the old rate, no new lease being executed. It was held that inasmuch as the defendant had paid the single and not the double rent, he must be taken to have held over under the covenant for renewal. It was there conceded that when the lease provides merely for an extension of the term at the option of the lessee, nothing need be done by the lessor, and that the continued occupancy of the premises and the payment of rent, constituted sufficient evidence of the lessee's election to extend the term. But it was insisted that when the lease provides for a renewal at the option of the lessee, though for a specified term and at a designated rent, there must be affirmative action by the lessor as well as by the lessee, and that while the lease for the additional term need not be written and signed, yet some new contract in relation thereto must be made by both parties before the lease can be regarded as having been renewed, and that in the absence of such express contract, the only contract existing between the parties is that which the law implies. But the court said that the defendant having continued to pay the rent provided for by the clause for renewal, he was estopped to deny that the term had been extended by that clause.

In _Kimball_ v. _Cross_, 136 Mass. 300, the lease was for one year at such a rent, with the privilege of continuing five years at such another rent. It was contended that the latter clause was a mere executory contract for a lease thereafter to be given should the lessee desire it. But it was held that the lease was the contract under which the subsequent occupancy, at the election of the lessee, was to be enjoyed; that by it the relations and rights of the parties were defined; and that its language was apt to create a then present demise when, at the end of the first term, the occupation was continued by the tenant.

In _Delashman_ v. _Berry_, 20 Mich. 292, 4 Am. Rep. 392, the lease was for one year with a privilege of three years at the same rent at the option of the lessee, who covenanted to surrender at the end of the term. It was held that by remaining in possession five days after the first year, the lessee signified his election to hold for three years, and was not bound to give other notice to the lessor.

In _Harding_ v. _Seeley_, 148 Pa. St. 20, 23 Atl. 1118, the lease was for the "term" of one year, "with the privilege of four years' additional lease" at the same rental. It was contended

that the clause, "with the privilege of four years' additional
lease," was a covenant to renew the lease, and not an option
for a longer or an extended term; that the nature of a covenant
to renew at the option of the tenant is such as to differentiate
his holding over from that of a tenant for a term certain with
an option for an additional term, which requires no further
conveyance. The court said that this view of the effect of a
holding over after the expiration of a term certain, where the
tenant has an option for an additional or further term, is gener-
ally held in this country; but construing the word "lease" in
the clause in question as equivalent to *term,* the court held that
by remaining in possession after the expiration of the first year,
the lessee was bound for the full term of four years.

So in *Montgomery* v. *Board of Commissioners,* 76 Ind. 362,
40 Am. Rep. 250, it was held that a tenant under a lease for
three years, with a privilege of five years at the same rate, by
holding over, became bound for the full term of five years. The
court said that the term did not necessarily terminate at the
expiration of three years; that its termination depended upon
the option of the tenant; that if the option was exercised, the
term continued for five years; that there was to be no renewal,
nor was there to be more than one term; that the term was
either for three years or five years, depending upon the tenant,
and that his option was to be exercised simply by retaining
possession, and if not exercised, it was his duty to surrender
possession, and not having done that, the inference that it was
exercised would seem to be irresistible. This case was approved
and followed in *Trestegge* v. *Benevolent Society,* 92 Ind. 82, 47
Am. Rep. 135.

Thus it appears that the defendant is in under a sufficient
lease for twenty years not yet terminated, and does not need
to rely for his tenure upon the written extension sought to be
set aside.

This being determinative of the case as made by the bill,
and it not appearing nor to be presumed that it can be made
otherwise, though it may be if the lease in fact warrants it, it
is unnecessary to consider whether the guardian's deed to the
orator revoked the extension, as claimed, and if not, whether the
orator, being a purchaser, is in such privity with the Richard-
sons as to enable him to impeach the extension on the ground of
their insanity.

But the defendant says that the bill should, in any view, be dismissed for want of jurisdiction, for that as the orator has the legal title of the reversion and is out of possession and the defendant in possession, holding adversely, an action of ejectment would afford him an adequate remedy.

*United States* v. *Wilson*, 118 U. S. 86, was a bill to remove a cloud from a legal title paramount to the title of the defendant, who was keeping the Government out of possession by holding adversely. It was held that the bill could not be maintained. The court said that in such cases equity has no jurisdiction, unless its aid is required to remove obstacles that prevent a successful resort to an action of ejectment, or when, after repeated actions at law, its jurisdiction is invoked to prevent a multiplicity of suits, or there are other specific equitable grounds of relief; that bills *quia timet,* such as that was, to remove a cloud from a legal title, cannot be maintained by one not in possession, because the law gives a remedy by ejectment, which is plain, adequate, and complete, and that such is the familiar doctrine of that court.

In *Frost* v. *Spitley*, 121 U. S. 552, 556, it is said that under the jurisdiction and practice in equity, independently of statute, the object of a bill to remove a cloud and to quit possession is, to protect the owner of the legal title from being disturbed in his possession or harassed by suits in regard to that title, and that the bill cannot be maintained without clear proof of both possession and legal title in the complainant. The Federal Judiciary Act of 1789, which declares that equity shall not have jurisdiction in any case where a plain, adequate, and complete remedy may be had at law, does not influence the holdings of that court on this subject, for it treats the provision as merely declaratory of the law that has governed proceedings in equity ever since their adoption by the courts of England. *Whitehead* v. *Shattuck*, 138 U. S. 146, where it is held that the owner of the fee, out of possession, cannot maintain a bill to remove a cloud against one in possession holding adversely. And this is the holding in most of the states where jurisdiction depends upon equity principles, unaffected by statutory provisions. Note to *Helden* v. *Hellen*, 45 Am. St. Rep. 375, and the cases *passim.*

But if there are specific equitable grounds of relief, the rule may be different. *United States* v. *Wilson*, 118 U. S. 86. Thus, it is said in *Booth* v. *Wiley*, 102 Ill. 84, that the rule that a bill

to quiet title and remove a cloud lies only when the complainant is in possession, or when he claims to be the owner and the land is unoccupied, applies only when the object of the bill is purely to remove a cloud from the title, and not when the primary relief sought is upon other and well established grounds of equitable relief, such as fraud, and the removal of the cloud is only an incident of that relief. In *Phillips* v. *Kesterson,* 154 Ill. 572, it is held that the rule has no application when a deed is sought to be set aside for fraud. But here the primary object of the bill as drawn is, not to set aside the extension for fraud, as none is sufficiently alleged, but to remove the cloud from the title.

As to what is an adequate remedy at law, we have recently said, adopting the language of the Federal Supreme Court, that "it is not enough that there is a remedy at law; that it must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its administration as the remedy in equity." *Heath* v. *Capital Savings Bank,* 79 Vt. 301, 305, 64 Atl. 1127. But no general definition can be formulated that will be a sufficient guide in all cases, for the law must be administered and applied with reference to the circumstances of the particular case.

This brings us to a consideration of the kind and character of the cloud here sought to be removed, and to what, in the circumstances, should be the disposition of the question of jurisdiction.

The orator knew when he bought the property that the defendant was in the exclusive possession of it, and he was told that he was holding over under the lease. This put him on inquiry, and was notice to him of the defendant's title, whatever it was. *Pope* v. *Henry,* 24 Vt. 560, 565; *Pinney* v. *Fellows,* 15 Vt. 525, 541; *Wright* v. *Bates,* 13 Vt. 341. It is not enough that he inquired of his grantor. He should have inquired of the defendant. *Canfield* v. *Hard,* 58 Vt. 217, 223, 2 Atl. 136. Nor does it avail him that he saw the defendant's letter, for as it is not effective against the defendant, it cannot rebut the presumption that the law raises from his possession. *Hackett.* v. *Callender,* 32 Vt. 97, 107. Had the orator inquired as he ought, he would have learned that the lease provided for an extension and not a renewal, and would have been charged with knowing the legal effect of holding over. So the orator took subject to

the defendant's rights, and his deed of the reversion made his title complete, for attornment was not necessary, and established between him and the defendant the relation of landlord and tenant, with all the rights and remedies incident to that relation, and entitled him to all the arrears of rent that accrued after his conveyance and not paid to his grantor in default of notice. *Pelton* v. *Place*, 71 Vt. 430, 46 Atl. 63; *Kellum* v. *Berkshire Life Ins. Co.*, 101 Ind. 455; *Scaltock* v. *Harston*, Law Rep. 1 C. P. 106.

Thus it appears that the case as presented is essentially that of a landlord seeking to remove from his legal title the cloud of his tenant's lease, terminating in eight years by its own limitation, and which, it would seem, the orator was willing to let run if he could get more rent, for the bill alleges that he notified the defendant that the use of the premises was worth $800 a month to him, which the defendant refused to pay.

Cases of this kind are not *strictissimi juris,* but are addressed to the discretion of the court, which is to be governed by general rules and principles as far as it can be, but which, at the same time, grants or withholds relief according to the circumstances of the particular case when those rules and principles furnish no certain measure of justice between the parties. 1 Story's Eq. Jur., Redf. ed., §§693, 742. It is said in *Wing* v. *Hall,* 44 Vt. 118, that "relief in such cases is granted, not as a matter of right that the party has who seeks it, but as a matter of discretion that the court may exercise or not as appears fit." There the court said it appeared fit, in the circumstances, that the parties should be left to try the facts by jury, as such questions are usually tried. This view was adopted and acted upon in *Rooney* v. *Soule,* 45 Vt. 303, where the court said that the discretion is to be exercised in exceptional cases, when the remedy at law is inadequate and delays dangerous, or where some other ingredient is shown requiring the effectual powers of equity jurisdiction to prevent fraud and injustice.

Now in the circumstances of this case, there are no general rules and principles that afford a certain measure of justice between the parties; there is no danger from delay, for an action at law can be commenced at once; no other ingredient is shown that requires the effective powers of equity to prevent fraud and injustice; and the orator would be no more embarrassed at law than in equity in respect of privity with the Richardsons. There-

fore we think it fit and proper to leave him to his remedy at law, unless he can amend his bill so as to cure the defects here adjudged.   ,

*Decree reversed, demurrer sustained, bill adjudged insufficient, and cause remanded, with mandate.*