THE AUGUSTA AMATEUR MUSICAL CLUB, plaintiff in error, *vs.* THE COTTON STATES' MECHANICS' AND AGRICULTURAL FAIR ASSOCIATION, defendant in error.

Under the facts of this case, as they appear in the record, including the two rejected letters, which we think should have been admitted, we are of the opinion that the plaintiff was entitled to go to the jury on the proof, and that the non-suit was error.

Non-suit.    Evidence.    Before Judge GOULD.    City Court of Augusta.    February Term, 1873.

The Augusta Amateur Musical Club brought complaint against the Cotton States' Mechanics' and Agricultural Fair Association on an account for $450 00, with a credit thereon of $150 00, for services rendered in playing at the fair grounds, and at the tournament ball, during the fair week commencing October 25th, 1870, and ending October 29th, 1870. A *quantum meruit* count was subsequently added to the declaration by amendment. The record fails to disclose the plea of the defendant. The following evidence was introduced for the plaintiff:

CHARLES T. SMITH, sworn: I am a member of the Musical Club, and am secretary of the same; the names of the members composing the club are set out in the declaration; the club did furnish music to the defendant during the fair in October, 1870. We played at the fair grounds of defendant, and occupied the grand stand; we played on October 25th, 26th, 27th, 28th and 29th; we also played at the tournament ball, given on Thursday night, October 27th, 1870. (The account was here shown witness, and he said, "the account is just and correct, and the charges are reasonable and proper.") The services were performed, and there is still due us a balance of $300 00; the account was for $450 00 originally, but we received from the treasurer of the Fair Association, November 7th, 1870, $150 00 on account.

*Cross-examined :* We played for the Fair Association ; the tournament ball was given, as I believe, by the defendant ; Mr. Cohen engaged us to play ; he was present one night shortly before the fair at one of our practices, and seemed pleased with the music, and said he desired to engage us to play during fair week. He, as I understood it, acted as chairman of the musical committee of the Fair Association ; he showed no authority from the Fair Asssociation ; I presumed he was chairman of the musical committee.

*Re-direct :* The charges are very reasonable ; the usual charge by musicians is from $7 00 to $10 00 per day, and from $10 00 to $15 00 per night ; we had over ten men with us all the time.

*Re-cross :* I testified in this case on the first trial at February Term, 1872 ; I am testifying as I did then, as near as I can recollect. I cannot mention any special case or time when I got from $10 00 to $15 00 per night ; I do not recollect any special time when the club—each man—got $10 00 or $15 00 per night ; I un lerstood the ball was given by the Fair Association ; I considered we were employed by the Fair Association from Mr. John J. Cohen's letter and from his actions ; we had some assistance from Savannah ; while playing, we were under the charge of the officers of the Fair Association ; I don't know that I can give all of their names ; Mr. E. H. Gray, the Secretary, gave us directions once or twice ; Mr. Thomas P. Stovall (who, I believe, is one of the directors) from the Judge's stand, just opposite the grand stand, frequently during the races, etc., gave us notice when to start and to stop playing ; the management was about the same at the ball ; we were not under the management of any particular officer ; the floor managers gave us directions about the dances.

*Second re-direct :* We were passed at the gates and into the grand stand free of charge, and also at the ball ; the services for five days and the night were worth $450 00 ; the Fair Association agreed to pay us $450 00 ; Mr. J. J. Cohen paid us $150 00 on account, for which I gave him a receipt. (Here defendant being unable to produce the original receipt

under the notice duly served, witness was allowed to give its contents, as follows :) When I received the money from Mr. Cohen, I wrote on the back of the original account, " Received from John J. Cohen & Sons, Treasurers of the Cotton States' Mechanics' and Agricultural Fair Association, $150 00 on account of the within bill." I signed it, " Charles T. Smith, Secretary." The bill was also marked, " Approved, John J. Cohen, Chairman." The bill was made out about like the one attached to the declaration. The letter of Mr. Cohen was here shown witness, and he identified it as the one Mr. Cohen brought to the club, and under which the club entered into negotiations with him about playing. A copy of said letter is hereto annexed, marked "Exhibit A." A copy of the reply to the same (defendant having failed to produce the original) was also shown witness and identified as correct. A copy thereof is hereto annexed, marked " Exhibit B."

*Second re-cross :* I never went to Mr. Branch myself ; I believe some of the club went to him ; they were told to go to him and he would pay them ; we wanted the money and went most anywhere we were told we could get it ; I can't say Mr. T. P. Branch was chairman of a committee of citizens ; I knew nothing about any such committee ; we looked to the Fair Association for our money.

FREDERICK L. COOPER, sworn : I am a member of the band ; we played for defendant, as stated by Mr. Smith, at the fair grounds and at the ball ; the account is correct, and the charges are reasonable ; we played five days and one night ; amateurs usually get from $7 00 to $10 00, and professors from $10 00 to $15 00 per day for playing ; we were employed by Mr. John J. Cohen (as we understood) who acted as chairman of the musical committee of the Fair Association. We never knew any one else in the transaction but defendant ; Mr. Cohen said he desired the band to look well, and we went to the expense of getting a new uniform which is still unpaid for, because we failed to get our money. We had about thirteen men with us during the week.

ADOLPH BRANDT, sworn : I am a member of the club; we played for the defendant, as stated by the other witnesses ; we were employed by the Fair Association, through Mr. John J. Cohen, as stated by Mr. Smith; when we were first spoken to by Mr. Cohen, the club held a meeting, and after debating, it was decided to play for defendant for $500 00 ; Mr. Cohen appealed to our generosity, and we decided if the Fair Association would furnish its own bugler, we would play for $450 00 ; Mr. Cohen closed with us on these terms; the Fair Association did furnish its own bugler and we played according to agreement.

ANDREW HETT, sworn : I am a professional musician and the leader of the club; we played for five days and one night for the Fair Association ; the charge is reasonable; I can't say exactly how many played.

*Cross-examined :* I think thirteen musicians for five days and a night were worth $450 00; there was a negro band playing on the Fair Grounds during the week; they did not play during the time we played ; we had nothing to do with them ; a professional musician is worth $10 00 a day.

Plaintiff here offered the letters, (John J. Cohen's and the reply to it) which were objected to by defendant, on the grounds that no authority had been shown in Mr. Cohen to make the contract for the Fair Association, which objection was sustained by the Court and plaintiffs excepted.

Plaintiffs closed ; whereupon the defendant moved for a non-suit.

After some argument had, plaintiffs introduced John J. Cohen, who testified as follows : I am the senior member of the firm of John J. Cohen & Sons, who are the treasurers of the Fair Association. The club played at the fair grounds in the grand stand. I can't say they played for, or that the Association got the benefit of their services. The letter referred to above was here shown witness, who identified it as the one written by him ; I had no authority to make any contract for the Fair Association ; I was chairman of the citi-

zens' committee, and in that capacity made the contract; I don't know that I disclosed to the members of the club for whom I was acting. The firm of John J. Cohen & Sons, as treasurers, did pay the club $150 00 on account; the money was paid under instructions from E. H. Gray, the secretary, who thought that about the amount the Fair Association ought to pay as their proportion; the Fair Association has never repudiated this payment.

*Cross-examined:* During fair week, the Agricultural Congress and some other bodies were in session in the city, and there were committees on the part of the City Council, Citizens, Board of Trade, Fair Association, and others, all acting in conjunction more or less to promote the interest of the congress, tournament party, Fair Association and other bodies; I was chairman of some of these committees, T. P. Branch of some, T. P. Stovall, John M. Clark, and various other citizens of others; some of these gentlemen are directors of the Fair Association; I made no contract as chairman of the musical committee of the Fair Association; I don't know that there was any such committee; I had no authority to make a contract for music for the Fair Association. The tournament ball was not given by the Fair Association; it was given by the various committees before mentioned.

Plaintiffs again offered said letters, which were objected to as before, and the objection sustained. Plaintiffs then announced closed. Defendant renewed its motion for a non-suit. and after argument had the same was sustained by the Court

"EXHIBIT A."

"AUGUSTA, GEORGIA, October 13th, 1870.

"The undersigned, committee of the Cotton States Mechanical and Agricultural Association desire to ascertain from the gentlemen of the Amateur Musical Association what time during the fair week they can appropriate to their services, and if they can furnish a bugler to be at the call all the time, and a full string and wind band for the grand reception and ball of the tournament party, and for the entire time of the

tournament as below: On Tuesday, first day, between eleven and two o'clock; on Wednesday and other days, between two and five; on tournament day as within; on ball night under order of committee. The gentlemen of the Musical Association will please consider the above requests and confer with the committee about the amount of compensation. The Fair Association being a volunteer affair on their part deem that the musical gentlemen will be moderate in their demands.

　　(Signed)　　　　" JOHN J. COHEN, Chairman."

" EXHIBIT B."

" AUGUSTA, GEORGIA, October 14, 1870.
" MR. JOHN J. COHEN, Chairman :

"*Dear Sir*—We, the undersigned, the committee appointed by the Augusta Amateur Club, to report to you the result of the action taken by the club upon your letter of the 13th instant, in relation to the engagement of the club to furnish music at the fair grounds during the approaching fair, beg to say that the club will give their services to the Fair Association, during the fair week, for the sum of five hundred dollars, ($500 00,) and will comply with the following order of duties as contained in your letter, to-wit: On Tuesday they will furnish music from eleven o'clock until two; on Wednesday and other days of the fair, except the tournament day, from two o'clock until five ; on the tournament day they will furnish music during the entire tournament; on the night of the tournament ball they will furnish a full string and wind band, including the extra music which may be needed to complete the band. They will also furnish to the Fair Association a bugler, who will be subject to their orders during the entire week of the fair. In making this offer the club fully appreciate the assistance which has been rendered them in their organization, and have therefore made it at the smallest possible sum consistent with the duty which they owe to themselves. Out of the sum charged the club will be compelled to pay the number of musicians who may be called from another city to make the string band complete, provided the

club find it necessary, and will have also to compensate the bugler for the extra services rendered by him, besides paying him his regular share of the proceeds. It being understood that the fair is not to continue more than five days.

(Signed)                    " SCHRINER,

                            " SMITH,

                            " COOPER,

                                    " Committee."

Plaintiffs excepted and say, that the Court erred—

1st. In ruling out said letters, as said correspondence tended, if not to establish a contract, at least, under the circumstances of the case, to show defendant's connection therewith.

2d. In granting said non-suit, there being sufficient evidence before the Court to take said cause to the jury, leaving them to judge whether said defendant ever ratified said alleged contract, and if not, whether defendant got the benefit of the services of plaintiffs.

JOHN S. DAVIDSON, for plaintiffs in error.

BARNES & CUMMING; H. G. WRIGHT, for defendant.

McCAY, Judge.

Under the frequent rulings of the Court, a non-suit can only be granted when the plaintiff has furnished no evidence authorizing a verdict. We do not think this is the case. Two witnesses swear positively that the service was performed as claimed, and that it was worth the amount set forth in the bill of particulars. True, there is other evidence going to cast doubt and confusion over this evidence. It is, nevertheless, very clear that the plaintiffs did act as musicians for several days at the defendant's fair, and that they were recognized as musicians by the officers in authority at the fair. Whether they were mere volunteers, or went there in the employment of somebody else than the defendant or its agents, is in truth the principal question. Without doubt, they

The Augusta, etc., Club *vs.* The Cotton States, etc., Association.

thought they were playing for the defendant, and if they were not they were imposed upon by Mr. Cohen, who represented to them, in writing, that he was chairman of a committee appointed by the defendant. In our judgment, it was within the scope of the authority of such a committee to procure music, and to agree to pay for it. When Mr. Cohen says he had no such authority, we presume he means express authority, but if he was one of the appointees of the defendant to make preparations for the coming fair, the authority to employ musicians would be implied in the committee, and the act of their chairman might fairly be taken as the act of the committee itself. Mr. Cohen says he did not contract with them as chairman of the defendant's committee; but the fact is he did so contract, for the letter which he admits was written by him, not only styled him the chairman of defendant's committee but appeals to them for a low charge, in consideration that the Fair Association is itself acting liberally in giving the entertainment. Were this any other corporation or individual, the fact that the plaintiffs played at the fair, occupied seats on the music stand, and were under the orders of the officers, would itself be sufficient to charge them. And *prima facie*, we think it does charge them. Nor does the statement of Mr. Cohen, that he acted as chairman of some other committee in employing them, conclusively rebut that presumption. By his letter, written at the time, and as part of the transaction, it is apparent that this was a mistake. Mr. Cohen has evidently forgotten what he did do and how he acted. That he was the plaintiffs' witness does not make what he now says conclusive. Is a man bound—concluded—by the *mistake* of his witness, if he has other proof showing the mistake? This is not discrediting his witness. We think the letters ought to have been admitted and the case submitted to the jury for their finding. Altogether the evidence made a sufficiently *prima facie* case to put the defendant on his defense.

Judgment reversed.