## OLIVER KIERSTEAD *vs.* HORACE A. BENNETT.

### Washington.    Opinion December 8, 1899.

*Prom. Note.    Association.    Pleading.*

The defendant gave a note in his "official capacity as treasurer of a voluntary association, of which he was a member," signing it as treasurer, for money lent to and used in the business of the association. In an action on the note the defendant claimed that he was not liable personally because it was the note of the association and not his own personal promise.

*Held;* that if he gave the note in his official capacity for and in behalf of the association, he thereby bound all of his associates, including himself.

The non-joinder of a co-promisor is available only by plea in abatement.

*Held;* that whether the note is the defendant's individual note, or that of the voluntary association, he is liable, in either case, in an action upon it.

AGREED STATEMENT OF FACTS.

"It is agreed that on August 26, 1895, the plaintiff delivered to defendant three hundred and fifty dollars and received the note declared on in his writ; that the money was used by the defendant to pay for the pay-roll work on the Danforth Trotting Park,

and that the record title to the land on which the park is situated is in the defendant, D. C. Parker and William J. Kingston, and that so much of the records of the Danforth Trotting Park Association, and of the directors thereof and of the records of the Danforth Trotting Park Company, as either party may desire, shall be made a part of this case. . . . ." Other material facts are stated in the opinion.

*C. B. Donworth,* for plaintiff.

1. The instrument is shown upon its face to be the individual undertaking of the defendant. It will not be contended that the abbreviation "Treas." following the signature will be allowed to influence the construction, as this court and that of Massachusetts have repeatedly held that such, and similar additions, are merely descriptive of the person who affixes his signature. In *Sturdivant* v. *Hall,* 59 Maine, 172, the note was signed: "John T. Hall, Treas. St. Paul's Parish;" in *Mellin* v. *Moore,* 68 Maine, 390, the signature was: "George Moore, treasurer of Mechanic Falls Dairying Association;" in *Ross* v. *Brown,* 74 Maine, 352, the word "treasurer" was affixed to the signature; in *Rendell* v. *Harriman,* 75 Maine, 497, the signatures were followed by the words: "President, Directors of Prospect and Stockton Cheese Company;" and in *McClure* v. *Livermore,* 78 Maine, 390, the addition was: "Treas'r Hallowell Gas Light Co."; in *Williams* v. *Robbins,* 16 Gray, 97, and in *Bartlett* v. *Hawley,* 120 Mass. 92, the word "agent" was affixed; in *Plimpton* v. *Goodell,* 126 Mass. 119, the word "administrator" was used; and in *Davis* v. *England,* 141 Mass. 587, the contention was over the suffix: "Pres. and Treas. Chelsea Iron Foundry Company." In all these, and many similar cases, the individual was held. Nor will the mere insertion of the alleged principal's name in the body of the instrument make the contract, even prima facie, that of the principal. Am. & Eng. Ency. Law (1st ed.), title Bills and Notes, p. 335. Such is the law of this state. In *Fogg* v. *Virgin,* 19 Maine, 352, the promise was made by: "We, the trustees of the Wayne Scythe Company," and in *Chick* v. *Trevett,* 20 Maine, 462, the issue was over the words: "We, the trustees of the M. E. Society," and in both

these cases the notes were held to be individual undertakings. In order to exclude personal liability, the note must be signed in the name of the supposed principal, or the promise must appear to have been made for and in his behalf. This seems to be the test which the courts invariably apply and the statute goes no farther. R. S., ch. 73, § 15. In *Barker* v. *Mechanic Ins. Co.*, cited approvingly by this court in *Fogg* v. *Virgin*, supra, the court say: "He" (the defendant), "describes himself as president of the company, but to conclude the company by his acts, he should have contracted in their name, or at least in their behalf." The insertion of the word "for" in the suffix: "Treas. for St. Paul's Parish," was held, in *Sheridan* v. *Carpenter*, 61 Maine, 83, to shift the liability from the individual to the corporation. The note in *Simpson* v. *Garland*, 72 Maine, 40, and 76 Maine, 203, was held to be the note of company because the subscribers expressly promised "*for*" their principal. And see *Bradlee* v. *Boston Glass Co.*, 16 Pick. 347.

In the case at bar the note does not disclose a promise "for" or "in behalf of," or "on account of," the Danforth Trotting Park Association, nor does it purport to bind the alleged corporation. It is the defendant's note unless the language expressly negatives any obligation upon him and asserts the obligation of his supposed principal.

2. The note in suit contains a latent ambiguity and a resort to extrinsic evidence will cause the rejection, as surplusage, of the words, "in my official capacity, as Treasurer of the Danforth Trotting Park Association." "Where there is a misdescription of a person or thing in a contract, as when no such person or thing exists, parol evidence to show the person or thing intended is admissible." Am. & Eng. Ency. title, Agency, p. 1043.

It is immaterial that defendant in the case at bar promised in his "official capacity." The promise is his upon its face; the language used charges him with the obligation.

There being no corporation, the defendant could not contract in its behalf; the reference to an official capacity should, therefore, be treated as surplusage and the instrument held to be the individual note of defendant.

*B. W. Hewes,* for defendant.

If there was not a legally established corporation, still the note purports to be the note of a corporation and not of an individual; and purporting to be the note of a corporation, no action can be maintained upon the note against the defendant who makes it in his official capacity as treasurer of the association. *Simpson* v. *Garland,* 72 Maine, 40; 76 Maine, 203.

And this would be true even though the defendant had no authority to execute any note; and it would be true that this action could not be maintained even though the defendant in this case knew that he had no authority. *Simpson* v. *Garland,* 76 Maine, 203.

Counsel also cited: *Walter* v. *Brewer,* 11 Mass. 97; *Noyes* v. *Lovering,* 55 Maine, 408; *Teele* v. *Otis,* 66 Maine, 329; *Bank* v. *Dix,* 123 Mass. p. 148; *Nobleborough* v. *Clark,* 68 Maine, p. 87; *Jefts* v. *York,* 4 Cushing, p. 371; *Bartlett* v. *Tucker,* 104 Mass. p. 336; *Rendall* v. *Harriman,* 75 Maine, p. 497.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, WISWELL, SAVAGE, FOGLER, JJ.

SAVAGE, J. Assumpsit upon a promissory note of the following tenor:—

"Danforth, Maine, August 26, 1895.
$350.

Thirty days after date, I, in my official capacity, as Treasurer of the Danforth Trotting Park Association, promise to pay Oliver Kierstead, or order, three hundred and fifty dollars, with interest, value received.

Horace A. Bennett, Treas."

The defendant pleaded the general issue. The plaintiff claims that this note is to be construed as the personal, individual obligation of the defendant, Horace A. Bennett, who signed it. The defendant, on the other hand, contends that the note, on its face, is the note of the Danforth Trotting Park Association, and that he is not personally liable. An examination of the record will, we think,

show that, so far as the proper decision of this case is concerned, it is immaterial which contention is correct.

The case shows that on July 12, 1895, the defendant and others organized a voluntary association. They chose officers. They voted that the name of the association be the "Danforth Trotting Park Association." They adopted by-laws and fixed the amount of the capital stock. On the following day, July 13, 1895, a part of the associates who had organized July 12, including the defendant, and also including others who had not previously been associates, signed articles of agreement, with the intent to organize a corporation under the statute. Due notice was given of a meeting for organization, to be held July 27, 1895. That meeting was not held. Subsequently, in September, 1895, and apparently without further notice, the associates who had signed the articles of agreement, went through the form of organizing a corporation under the name of the "Danforth Trotting Park Association." The proceedings were manifestly irregular, and we express no opinion as to their validity. It is evident that on the date of this note, August 26, 1895, there was no corporation by the name of the "Danforth Trotting Park Association." Nor had those who had associated themselves for the purpose of organizing a corporation adopted any name at that time. But there was a voluntary association of that name when this note was given, and the defendant was one of the associates, as well as treasurer of the association. There was no other Danforth Trotting Park Association than the one of which the defendant was a member. That was the one in existence August 26, 1895, and we must assume that the defendant contracted with reference to it, rather than with reference to something which did not exist.

Now the defendant claims that the note sued must be held to be the note of the Danforth Trotting Park Association, and that when the defendant promised in his "official capacity," he promised for and in behalf of the association. Assume it to be so. Then he promised for and behalf of all the associates, including himself. That being so, all the members, himself included, are liable upon the promise which he made. All are co-promisors. He is sued;

the others are not.    But the non-joinder of a co-promisor is available only by plea in abatement.

Hence it follows that whichever view may be taken of the note, the defendant is liable.

*Defendant defaulted.*