HARDY et al. v. CARTER et al.

(Court of Civil Appeals of Texas.    Amarillo.
Jan. 10, 1914.    On Motion for Re-
hearing, Feb. 21, 1914.)

1. ASSOCIATIONS (§ 16*)—POWERS AND AU-
THORITY.
A voluntary association, before adoption
of its constitution and by-laws, could adopt any
means to accomplish its object, and hence the
validity of a loan obtained by a committee, and
the execution of notes therefor, could not be
challenged by parties who had signed the as-
sociation contract and executed their notes to
the committee, nor could the obligation to the
lender be impaired by a provision of the sub-
sequent constitution defining the powers of
its directors.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 26–28;  Dec. Dig. § 16.*]

2. ASSOCIATIONS (§ 16*)—RIGHTS OF MEM-
BERS.
Members of a voluntary association, which
had executed notes to secure a loan, had the
right, upon the maturity of such notes, to pay
them and, at the proper time, to demand con-
tribution of their co-obligors.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 26–28;  Dec. Dig. § 16.*]

3. ASSOCIATIONS (§ 16*)—MEMBERS—LIABIL-
ITY.
Each member of a voluntary association is
liable for its debts, necessarily contracted to
carry out its objects, and, where its directors
might have agreed to extend original notes and
pay interest on such extension from time to
time, they had the right to secure the postpone-
ment of the note by making new notes to dif-
ferent payees.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 26–28;  Dec. Dig. § 16.*]

4. BILLS AND NOTES (§ 140*)—EXTENSION AS
TO ONE JOINT MAKER—EFFECT.
Giving time to one joint maker of a nego-
tiable note does not discharge the other joint
makers.
[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 355–359;  Dec. Dig. §
140.*]

5. ASSOCIATIONS (§ 16*) — RIGHTS OF CO-
OBLIGORS—RENEWAL.
Members of a voluntary association who
consented to a loan obtained by the association,
which debt was primarily theirs could not ob-
ject to a renewal of such note by their co-
obligors, when made necessary by their own
failure to pay it at maturity, especially where
such action was beneficial to them.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 26–28;  Dec. Dig. § 16.*]

6. ASSOCIATIONS (§ 16*)—ACTS OF OFFICERS—
RATIFICATION.
Members of a voluntary association pri-
marily liable on notes for a loan to the associa-
tion, who acquiesced in and accepted the bene-
fits of a renewal by their co-obligors, thereby
impliedly ratified such renewal.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 26–28;  Dec. Dig. § 16.*]

7. ASSOCIATIONS (§ 18*)—RIGHTS OF THIRD
PERSONS — PRESUMPTION OF AGENT'S AU-
THORITY.
A bank, which had made a loan to a vol-
untary association, secured by notes executed
by part of the members, and upon which all
the members were primarily liable, which note
had been renewed from time to time, was jus-
tified in presuming that the president and the

secretary treasurer had power to execute it
and could hold the members liable on the trans-
action, as being within the apparent authority
of such officers.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 31–35;  Dec. Dig. § 18.*]

8. ASSOCIATIONS (§ 20*) — JUDGMENT — CON-
FORMITY TO PLEADING AND ISSUES.
In an action on a note executed by a vol-
untary association and upon which its members
were primarily liable as co-obligors, in which
part of such defendants filed a cross-action ask-
ing for judgment over against their co-defend-
ants over and above the pro rata part which
they were themselves bound to pay, a judgment
for plaintiff against defendants jointly and sev-
erally, and against each defendant in favor of
each, apportioning against each defendant the
total amount due the plaintiff, was not without
support in the pleadings.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 36–43;  Dec. Dig. § 20.*]

9. ASSOCIATIONS (§ 12*)—RIGHTS OF DIREC-
TORS—APPLICATION OF FUNDS TO INDEBTED-
NESS.
The directors of a voluntary association,
not required by anything in the contract or
constitution to apply funds derived from any
assessment to the payment of any particular
debt, might apply the funds to any debt without
becoming liable to the members.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. § 15;  Dec. Dig. § 12.*]

10. ASSOCIATIONS (§ 20*)—TAKING THE CASE
FROM JURY—PEREMPTORY INSTRUCTION.
On the evidence in an action against the
members of an association upon a note on
which they were primarily liable as co-obligors,
held that a peremptory instruction to find for
plaintiff against the defendants jointly and
severally was proper.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 36–43;  Dec. Dig. § 20.*]

On Motion for Rehearing.

11. ASSOCIATIONS (§ 20*)—FORM AND REQUI-
SITES—PENALTY.
In an action against members of a volun-
tary association primarily liable upon a note
as co-obligors, a judgment for plaintiff against
the defendants jointly and severally, and in fa-
vor of each defendant against each other de-
fendant for the amount he should be required
to pay over his own pro rata obligation, was
not objectionable, because the several amounts
which the plaintiff was permitted to recover
against each defendant was calculated and en-
tered therein.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 36–43;  Dec. Dig. § 20.*]

12. ASSOCIATIONS (§ 16*)—OFFICERS AND COM-
MITTEES—POWERS.
Where directors and officers of a volun-
tary association, which had obtained a loan
upon notes, on which the members were pri-
marily liable as co-obligors, renewed the note,
the members of the association, having no legal
status and independent of the question of part-
nership, were personally liable.
[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 26–28;  Dec. Dig. § 16.*]

13. ASSOCIATIONS (§ 16*)—MEMBERS—LIABIL-
ITY.
In such case it was too late, after the pur-
pose had been accomplished and the money ex-
pended by such officers, for the members to insist
that they were not responsible, because they
were not present and actually participating as
members of the committee when a new party
was substituted for the party in the original

railroad promotion contract, in furtherance of which the association had been organized.

[Ed. Note.—For other cases, see Associations, Cent. Dig. §§ 26–28; Dec. Dig. § 16.*]

Appeal from District Court, Swisher County; L. S. Kinder, Judge.

Action by A. F. Carter against J. R. Hardy and others, with cross-action by defendants Q. E. Brown and others against the other defendants. Judgment for plaintiff against defendants, jointly and severally, and, as between defendants, judgments rendered against each in favor of each, and defendants J. R. Hardy and others appeal. Affirmed.

Martin & Zimmerman, of Tulia, and J. E. Daniel, of Silverton, for appellants. Mathes & Williams, R. C. Joiner, and Randolph & Randolph, all of Plainview, for appellees.

HALL, J. On the 15th day of February, 1909, one Edward Kennedy, as a promoter, entered into a contract with certain of the citizens of Silverton, Tex., by the terms of which the said citizens, defendants in this suit, obligated themselves to pay the said Kennedy $70,000, one-seventh to be paid in cash, and the remainder upon the happening of certain contingencies not necessary to be set out here. In consideration of this undertaking, Kennedy agreed to build a railroad through Briscoe county and through the town of Silverton "within two years from said date, and as much sooner as may be possible." Among other stipulations contained in the written contract, we find this: "The parties of the second part do hereby agree to be collectively responsible for the performance of this contract." On April 14, 1909, the defendants in this suit, designating themselves the railway guarantee committee, drew up a constitution and set of by-laws, from which we quote the following:

"Preamble. We, the railroad guarantee committee of Briscoe county, Texas, consisting of the persons whose names hereinafter appear, in order to dispatch business, finance and meet the obligations we have assumed by the contract, with Edward Kennedy, do hereby bind ourselves, heirs, and executors to be governed by the following constitution and articles of agreement:

"Section 10. Powers of Board of Directors. The board of directors shall have power to pay out money on monthly estimates of the surveyor as per contract with Edward Kennedy or on interest and loans made by the railroad guarantee committee and recording and attorneys' fees. They shall have power to negotiate loans for said guarantee only upon order of the committee and the signatures of the president and secretary to a note so ordered shall bind the entire railroad guarantee committee of Briscoe county, Texas; also said board of directors shall prorate each assessment among the entire number of subscribers, according to their several amounts or cash subscribers."

On February 15, 1909, 29 of the 50 members constituting the guarantee committee including appellants Harris, Daniel, and Burson, executed to the First National Bank of Silverton three notes in the sum of $3,000 each, stipulating for 10 per cent. interest from date, and 10 per cent. attorneys' fees, all three being payable on demand. This money was borrowed to pay Kennedy the cash payment under the contract. On May 22, 1909, the directors, for the purpose of paying the balance due on this loan, borrowed $6,000 from the First National Bank of Tulia for six months. Thereafter, in the same way, money was borrowed from the Silverton Bank & Trust Company to pay the balance due the First National Bank of Tulia on the $6,000 note above mentioned, and this loan was renewed from time to time, resulting in the note here sued upon, dated March 4, 1911, for $2,524. This note is payable April 17, 1911, and contains this recital: "I, we, or either of us, jointly and severally, promise to pay to the order of the First State Bank & Trust Company, the sum of twenty-five hundred and twenty-four and no one hundred dollars." It provides for interest, at the rate of 10 per cent. from maturity, and 10 per cent. attorneys' fees, and is signed as follows: "Railroad Guarantee Committee of Briscoe county, Texas, J. Ed. Crawford, President, R. B. Braley, Secretary Treasurer"—and bears this indorsement: "Payable to the order of A. F. Carter, without recourse, previous indorsements guaranteed. The First State Bank & Trust Company, Silverton, Texas. A. F. Carter, Cashier. April 11, 1911."

By amended petition, plaintiff, Carter, appellee herein, made each of the signers of the contract with Kennedy parties defendant. In the trial of the case, the defendants seem to have been divided into two clans. The defendants Q. E. Brown, R. L. McMurtry, J. H. Burson, and J. M. Harris and J. E. Daniel answered by general denial and plea of non est factum. They further alleged that, if they were liable on said note at all, then all the other defendants were jointly and severally liable on said note with them and prayed that if plaintiff recovered anything against them, that they recover against the other defendants herein such amounts over and above the pro rata part of the indebtedness which the said defendants would have to pay. By cross-action they allege that their liability, if any, on said notes grew out of the constitution of the guarantee committee and of the contract made with Kennedy by said committee, and that November 6, 1909, an assessment of 35 per cent. of all subscriptions was levied, which was sufficient to include and pay up everything due by the guarantee committee at that date; that these defendants have paid said 35 per cent. assessment, and that the note in controversy was made necessary by the failure of other

subscribers to pay their part of said assessment, and, had the amounts paid on said assessment been credited on said notes and not used for other purposes, there was sufficient paid in to have paid off said note in full; but that said money was used for other purposes; that defendants Fred Biffle, R. B. Braley, Bruce Gerdes, K. E. Baine, J. L. Francis, A. P. Donald, J. Ed. Crawford, M. P. Stone, and J. B. Porter were the officers of said association and authorized to spend the money of same only in accordance with the terms and conditions of the constitution and by-laws, and that they collected on said 35 per cent. assessment enough to pay off said notes, but did not apply the same thereon, but paid it out to other and different parties than Edward Kennedy on said note, and to whom they were not authorized to pay the same, and that by reason thereof said defendants were individually liable on said note. They prayed that if plaintiff recover against them, that they have judgment against said Biffle and the other officers and directors mentioned above. The answer of appellant J. R. Hardy was the same, except that, in addition thereto, he pleaded that, at the time of the delivery and execution of the note, he was not a member of the guarantee committee, having on June 4, 1909, especially repudiated all further liability under the constitution of said committee and withdrew from any connection therewith.

Defendants Biffle, Braley, and others mentioned above, constituting the directors and officers of the association, together with other members of the committee, answered by general denial and specially that they and all of the other defendants associated themselves together as a railroad guarantee committee and executed the contract hereinbefore set out, which said agreement was placed of record in Briscoe county; that said railroad committee authorized and empowered the executive officers, among other things, to secure a sum of money necessary to assist them in the pursuance of said enterprise and in the payment of the bonus due Kennedy, and that the money borrowed from the First State Bank & Trust Company was borrowed by said officers from the First National Bank of Silverton to pay the same; and that other moneys were borrowed, until finally the note herein sued upon was executed and delivered for the purpose of paying off said original loan; that the liability of all the defendants was joint and several.

In reply to the cross-action of the defendants J. R. Hardy, Q. E. Brown, J. H. Burson, and others, they alleged that on the 11th day of April, 1909, Edward Kennedy turned over to the Texas Construction Company his contract entered into with the committee, and that such transfer was made by and with the consent of said railroad committee, and executed by said committee, and that said Construction Company and said committee did, in all things and in good faith, attempt to carry out the terms of said original contract, and that the moneys thereafter paid out were paid by reason of all the obligations named and by reason of said transfer.

A jury was impaneled, and, after the evidence closed, the court gave the special charge No. 1, requested by J. Ed. Crawford and others, peremptorily instructing the jury to · return a verdict in favor of plaintiff against all the defendants jointly and severally for the sum of $3,336.08, which should be paid by the defendants in the amounts set opposite their names. The verdict is in part as follows: "We, the jury, return a verdict in favor of plaintiff in this cause, as against the defendants, as charged by the court, jointly and severally except John A. Baine, for the sum of $3,336.08, which judgment, as between the defendants herein, shall be paid by the defendants named below in the amounts set opposite their names, the original members of the guarantee committee who have died, having their heirs substituted in their stead as follows, to wit." Then follows a detailed statement of the amounts found against each member of the guarantee committee, and the verdict concludes: "And we hereby return a verdict against all the defendants on all other cross-actions herein filed."

Upon this verdict, the court entered judgment in favor of plaintiff, A. F. Carter, against the members of the guarantee committee jointly and severally, and provided as follows:

"And it is further ordered, adjudged, and decreed by the court that, as between the defendants herein, judgment is hereby rendered against each, in favor of each, as set forth in the above recited and copied verdict of the jury, said judgment being made payable under the order of the court as follows, to wit:

"First. Any defendant herein, shall by paying his or her proportional part of said judgment, as set forth in the verdict above copied, be entitled to have plaintiff's execution levied upon property pointed out by the defendants who have paid their proportional part of said judgment belonging to the other defendants or either of them, who have not paid their proportional part of said judgment in favor of plaintiff.

"Second. Each defendant herein who shall pay any proportion of this judgment over and above the proportion thereof that has been adjudged against the said defendant shall have execution against the other defendants hereinabove named who have not paid such proportion of the judgment as shall equalize same between said defendants.

"Third. Each defendant herein who shall pay any proportion of this judgment due by any other defendant herein shall have execution in his or her favor against each of the other defendants who have not paid their proportional part of said delinquent defendant's interest in this judgment," etc.

As between the bank and the guarantee committee, the members of the committee were principals on the note, provided it was executed under proper authority, or its execution had been subsequently ratified, and no question of suretyship or guaranty arises. As between Kennedy and the guarantee committee, the contract above set out was a joint undertaking in which all of the defendants were principal obligors. The contention of J. R. Hardy, Q. E. Brown, J. M. Harris, J. H. Burson and J. E. Daniel, et al., is, first, that the judgment, having been rendered upon the note for the full amount claimed, was without proper pleadings to support it. It is true that plaintiff filed suit upon the note, and under his petition was entitled, if at all, to a judgment against the guarantee committee jointly and severally for the full amount; but the defendants, by their pleadings, requested the court to enter a judgment giving each one the right of contribution against his co-obligors, and, under this state of the pleadings, the judgment was properly rendered, if the court had the right to render judgment on the note at all.

The serious question . in this appeal is raised by appellant's first proposition under the first assignment, which is that the court erred in peremptorily instructing the jury to find for plaintiff against these appellants, because the evidence failed to show that the note in controversy was executed by the board of directors acting under sufficient authority from these appellants to bind them or by or with the knowledge, acquiescence, or consent of them, and fails to show that they ratified the same. It is contended under this proposition that, this being a voluntary association, and the officers thereof acting under a special and limited authority, their acts must be in strict conformity therewith, or the remaining members of the association would not be bound, and that the burden of proof rested upon the plaintiff to show the authority of the directors in the execution of the note. The evidence in the record upon this question is in substance as follows: "Minutes of Meeting Feb. 15, 1909. The Guarantee Committee of Briscoe County, Texas. A number of citizens of Briscoe county met Monday, Feb. 15, 1909, at Silverton, Texas. There was a motion that there be a committee of three appointed to confer with the First National Bank of Silverton, Texas, to see if the committee could secure the first payment of money that is required by Mr. Ed. Kennedy. Motion carried. Mr. J. B. Porter, Mr. M. P. Stone, and Mr. P. L. Crawford were appointed upon this committee. The committee made a favorable report in regard to securing the necessary money. There was a motion that three men be appointed to carry three notes for $3,000.00 each to the First National Bank of Silverton, Texas, to secure the $9,000 payment to Mr. Ed. Kennedy. The motion carried. Mr. P.

L. Crawford, M. P. Stone, and R. B. Braley were appointed upon this committee. This committee went with others of the guarantee committee to the First National Bank and secured the $9,000.00 from the bank for Mr. Ed. Kennedy, and delivered the $9,000.00 to Mr. Ed. Kennedy. Adjourned to meet Feb. 17 and 20, 1909. R. B. Braley, Secretary. Accepted."

This loan was negotiated the same day on which the guarantee contract binding the appellants and others to pay Kennedy the $10,000 cash was executed. (For some reason, unexplained in the record, Kennedy had waived the immediate payment of $1,000 of this sum.) It is uncontradicted that the loan was authorized by the mass meeting of citizens which met on February 15th, and which gave birth to the contract with Kennedy, and that this was two months before section 10 of the constitution, which limited the power of the directors to borrow money, was framed and adopted. There being no directors at that time, a special committee was appointed to arrange for the loan, and the first notes were signed, not by the president and secretary treasurer of the association, as was afterwards provided for in the constitution, but by 29 of those who had signed the guarantee contract with Kennedy. The notes were executed in this way simply to satisfy the bank. Each subscriber to the bonus of the enterprise, including appellants, had made his note to the guarantee committee in the amounts subscribed by him, but, this being the day of organization, no cash had been paid by the subscribers, so, in order to carry out the purposes of the association and to meet the obligation to pay $10,000 cash, this loan was effected. Appellants, having signed the contract, knew that the cash payment must be made and they were each, as individuals, responsible therefor.

[1] There being at that time no constitution or by-laws, the association had no check upon its powers, and could adopt any means to accomplish the object for which it was formed. 4 Cyc. 308 (II). We think the validity of the first loan and the execution of the three notes therefor cannot be challenged by appellants, nor could the obligations to the bank be impaired by the subsequent adoption of article 10 of the constitution. This loan had been made beforehand, and, in paying interest upon it afterwards, the directors did not exceed their authority even under the constitution, because the first sentence of said section 10 empowers the board of directors to pay out money on interest and loans.

[2] Appellants had the right, upon the maturity of the three original notes, to pay them, and at the proper time to demand contribution of their co-obligors. This they failed to do. Although the evidence of the indebtedness has changed from time to time as to amount, payee, and date of maturity, the debt sued upon is part of the original

obligation. We do not hold that, after the adoption of the constitution, the directors could have, as an original undertaking, negotiated a loan, in the absence of an order to that effect by the committee. While the directors borrowed from one bank to pay another, the effect of their act is simply a renewal and extension of the debt, for which all the defendants were jointly and severally liable, and does not come within the inhibition of said section 10 of the constitution.

[3, 4] "Each member of an association is liable for the debts thereof incurred during his period of membership and which have been necessarily contracted for the purpose of carrying out the objects for which the association was formed." 4 Cyc. 311. It cannot be successfully contended that the directors, under the constitution, could not have agreed with the first bank to extend the original notes and to pay interest upon such extensions from time to time, and that, too, without releasing their co-obligors. Giving time to one joint maker of a negotiable note does not discharge the others. Dan. Neg. Inst. (5th Ed.) § 1297. If this be true, then they had the right to secure the postponement of the debt by making new notes and to different payees. The effect is the same.

[5] Having previously consented to the loan, they cannot be heard to object to its renewal by their co-obligors, when made necessary by their failure to pay it at maturity. Meachem's Agency, §§ 72, 74. The debt was primarily theirs. They must be held to have known the date of its maturity. Having failed to give it proper attention at that time, appellants cannot complain because their co-obligors took whatever action was necessary, and especially so when such action did not result to the injury of appellants, but, on the contrary, was beneficial to them.

[6] They knew the loan had been made and had not been paid, and they must be held to have known that its maturity had been postponed in some satisfactory way. Having acquiesced and accepted the benefits, there is an implied ratification of the acts of the directors. 1 Elliott on Contracts, § 459.

[7] Even if we should admit that the directors transcended their authority in the execution of the note in suit, still we think the payee bank was justified in presuming that the president and secretary treasurer were empowered to execute it. This note was a renewal of one for $2,500 previously given to the same bank, and, as heretofore stated, the debt had been renewed from time to time for more than a year. As said in 2 Page on Contracts, § 965: "Persons who do not know what the agent's authority really is are justified in dealing with him upon the assumption that he has the authority which the principal indicates by his conduct that the agent possesses. Thus dealing with the agent, such persons may hold the principal on contracts outside the real authority of the agent but inside his apparent authority." Note: "Persons dealing with an agent have the right to presume that his agency is general, and not limited, and notice of limited authority must be brought to their knowlede before they are bound to regard it. Trainer v. Morison, 78 Me. 160, 3 Atl. 185, 57 Am. Rep. 790; quoted in Wood v. Finson, 89 Me. 459, 36 Atl. 911." "The principles of estoppel find application in cases where contracts are made by an agent in excess of his real authority but within the scope of his apparent authority. As a general rule, one who holds out another as his representative, authorized to act for him in a given capacity, or has knowingly or negligently permitted such other to act as his agent in a given capacity, without dissent or when his acts and the circumstances of the case are such as to reasonably warrant the presumption that such other is his agent, that authority to act in a given matter will be held as principal. Whether it involves one or more transactions, he will be conclusively presumed so far as it is necessary, to protect the rights of an innocent third person, who in the exercise of reasonable prudence, has dealt with such other in good faith to have authorized such other to act for him and will be held as principal and not heard to deny that the other was his agent, authorized to do the act performed so long as such act is within the scope of his apparent authority." 1 Elliott, § 454. This disposes of appellant's first, second, fifth, sixth, seventh, eighth, and ninth assignments.

[8] In view of what has heretofore been said, we think there was no error in rendering judgment against appellants on the note, including attorney's fees and interest. The pleadings of the defendants converted this suit, as between themselves, into one for an accounting and settlement, and the judgment and verdict, in apportioning the total amount due plaintiff among the several defendants, does nothing more than could have been done by separate suits for contribution. We think there was no error in this.

[9] There is nothing in the constitution of the association or in the contract requiring the directors to apply the funds derived from any assessment to the payment of any particular debt, and, in the absence of specific directions, they had the right to pay either Parks and Lemon or appropriate the funds to the extinguishment of the note without becoming liable to appellants. None of the appellants testified in the case, and the appellee's evidence bearing upon the several issues is undisputed.

[10] As we see the record, there is no controverted issue of material fact to be submitted to the jury, and we think the court did not err in giving the peremptory instruction. The judgment is therefore affirmed.

On Motion for Rehearing.

The appellants Hardy, McMurtry, Burson, Brown, Harris, and Daniel have filed quite a lengthy motion for rehearing, supplemented by an extended argument, in which the original opinion of the court in this case is reviewed and criticized. One ground insisted upon in the motion is that this suit was prematurely brought, because it was not shown by any of the pleadings that the railroad had been completed, or that the project had been abandoned. This is a question which seems to have been raised for the first time on appeal. No exception was urged by any one in the court below, and, upon that ground and for that reason, we did not consider the question in the original opinion.

We are cited by appellants in their motion to Meachem on Agency, § 706, announcing the doctrine that third persons dealing with an assumed agent are bound to ascertain the nature and extent of the agent's authority. The rule announced does not apply to the facts of this case. The uncontroverted evidence is that the directors and the officers of the railroad guarantee committee were not assumed agents. They were duly elected and constituted officials of the association, acting within the limits of their powers as such. The contract and by-laws creating the offices which they held and from which their authority was derived were matters of public record, and had been subscribed by the appellants. It is said in the motion that we erred in the opinion in stating that the pleadings of the parties authorized the court to enter a judgment giving the defendants the right of contribution, and appellants say that the only kind of a judgment which the pleadings and prayer authorized was a joint and several judgment against all of the defendants and then a right of contribution among the defendants as to an equal pro rata part of the amount of the principal of the note and 6 per cent. per annum and interest thereon and no attorney's fees. The plaintiffs' action was brought upon the note alone. The appellants, except Daniel, filed answers containing several prayers, which we give, in substance, as follows:

Wherefore this defendant prays upon final hearing hereof, if plaintiff recover anything against him, he have and recover of and from said defendants Biffle, Braley, Crawford, etc., such amount as may be recovered against him by plaintiff; at least such amount of said funds as were negligently expended by said defendants, for costs of suit and for such other and further relief, both general and special, in law and in equity to which he may be entitled.

Again, wherefore this defendant prays that plaintiff take nothing by his said suit against him, and that he be permitted to go hence without day and recover his costs herein, but that in the event plaintiff recover anything against him, that he have judgment over against the other defendants herein for such sum as may be recovered of him by plaintiff, for costs of suit, and for such other and further relief, general and special, in law and in equity, to which he may be entitled.

Again, wherefore these defendants pray that upon final hearing hereof, if plaintiff recover against them herein, then that they recover over and against all of said above-named parties according to their respective liabilities shown by said contracts, and that, should plaintiff recover any judgment against these defendants for any sum over and above their pro rata part determined according to the terms of said agreement, then that they have judgment over and against said parties named above and said other named defendants for such sum or sums as they may be required to pay in excess of their pro rata parts, and for such further relief, general and special, in law and in equity, that they may show themselves entitled to.

Again, wherefore they say that if plaintiff recover anything against them, that, by reason of the facts above stated, they ought to have and recover over and against each and all of said other defendants jointly and severally the amounts so recovered against them by plaintiff, or at least 35 per cent. of the amount of each of said defendant's subscription to the building of the railroad guaranteed by said railroad guarantee committee of Briscoe county, Tex., and for costs of suit and for such other relief, general and special, in law and in equity, to which they may be entitled.

And finally, wherefore these defendants pray that, upon final hearing hereof, if plaintiff recovers anything against them, that they have and recover of and from said defendants Biffle, Braley, etc., such amounts as may be recovered against them by plaintiff, or at least such amount of said funds as were negligently expended by said defendants, for costs of suit and for such other and further relief, both general and special, in law and in equity, to which they may be entitled.

[11] We are not prepared to criticize the judgment of the court and the verdict of the jury, because the several amounts which plaintiff was permitted to recover against each of the defendants was calculated and entered therein. Some of the objections urged by appellant might have been obviated if the court had rendered a joint and several judgment against the guarantee committee with the right of contribution between them. We think, however, that the particularity apparent in the judgment and verdict does not render it void or even voidable, nor limit the rights of the defendants in the judgment inter se. The pleadings which we have outlined in brief in the original opinion, when considered in connection with the various prayers appearing from time to time and set out in substance above, certainly authorized the court to render exactly the judgment which appears in the record. We have not taken the time to figure the exact amounts

due from each member of the committee to ascertain whether or not any mistake has been made in the calculations, but, since no objection is urged upon that ground, we take it for granted that the amounts named by the court are correct.

In their argument, supplementing the motion in this case, the appellees insist that no case can be found bearing upon the right of a comaker to make a new note to a different payee for a different amount and upon different terms and bind his comaker thereon. If such a case could be found, it would have no application to the facts of the case under consideration. This is not a question of one comaker making a new note to a different party containing different stipulations and endeavoring to bind his comaker. The question here is primarily one of agency and the right of the directors and officers of a voluntary association, organized as this has been, to bind the other members. In Fredendall v. Taylor, 23 Wis. 538, 99 Am. Dec. 203, it is said that the members of a committee of a voluntary association are individually liable on a contract made by a subcommittee of their number under authority delegated by the whole committee with one who contracted on a credit of the committee personally and not of the association, although in making the contract the subcommittee assumed to act as officers of the association. In that case Taylor and Kreiss and Leich were members of a committee appointed by the State Firemen's Association to make the necessary arrangements for holding the annual tournament, and, as such, they made a contract with Fredendall for a tank for the use of the association. Paine, J., said: "It is true, they did not act personally in contracting with the plaintiff, the committee having delegated its authority to a subcommittee composed of Spencer and Leitch; but the latter, in making the contract, were acting as agents of the committee, so that the liability of the whole committee is the same as though all had acted in making the contract. It was not claimed that the contract was not within the scope of the committee's authority, or of that delegated to the subcommittee. On the contrary, it is conceded, that the well was necessary to the tournament, and it was used for that purpose, * * * and, where such is the case, a committee which assumes a contract for services for such an irresponsible, intangible association must become personally liable, else there is no liability whatever. One professing to act as agent, if he does not bind his principal, binds himself. Dennison v. Austin, 15 Wis. 334. And it can make no difference that the reason why he does not bind his principal, is because the principal for whom he professed to act has no existence. It is not to be presumed in this case that the plaintiff contracted upon the credit of the association, and there is proof tending to show, that, although he only understood that the committee was acting for the association,

163 S.W.—64

yet he relied on the personal liability of the committee, including Taylor and Kreiss. The case is not distinguishable in principle from that of McCartee v. Chambers, 6 Wend. (N. Y.) 649, 22 Am. Dec. 556, where the committee, acting by an agent, as in this case, are all held personally liable. Such a rule is salutary, and tends to the motion of justice, by preventing the procurement of services from too incautious and confiding laborers, by putting forward an irresponsible committee to act for an irresponsible public gathering." In the instant case, the officers who signed the note may be considered as the subcommittee, and the rule announced is in point.

In Wehr et al. v. Germ. Evan. L. St. M. C. of Baltimore, 47 Md. 194, it is said: "We think this a case when the general principle applies that, where a corporation, or other organization of persons, is represented by a select body of its members, unless there be something in its rules, or in the delegation of authority to the contrary, the act of the majority is to be taken as the act of the whole. It is the general understanding, as observed by Lawrence, J., in Witchnell v. Gartham, C. T. Rep. 388, that 'When a body of persons is to do an act, a majority of that body will bind the rest.'"

In Augusta Musical Club v. Cotton States Mechanic's & Agricultural Fair Ass'n, 50 Ga. 436, where certain musicians sued for services rendered to the defendant, the court said: "It is nevertheless very clear that the plaintiffs did act as musicians for several days at the defendant's fair, and that they were recognized as musicians by the officers in authority at the fair. Whether they were mere volunteers or went there in the employment of somebody else than the defendant or its agents is, in truth, the principal question. Without doubt, they thought they were playing for the defendant, and, if they were not, they were imposed upon by Mr. Cohen, who represented to them, in writing, that he was chairman of a committee appointed by the defendant. In our judgment, it was within the scope of the authority of such committee to procure music, and to agree to pay for it. When Mr. Cohen says he had no such authority, we presume he means express authority, but if he was one of the appointees of the defendant to make preparations for the coming fair, the authority to employ musicians would be implied in the committee, and the act of their chairman might fairly be taken as the act of the committee itself. Mr. Cohen says he did not contract with them as chairman of the defendant's committee; but the fact is he did so contract, for the letter which he admits was written by him, not only styled him the chairman of defendant committee, but appeals to them for a low charge, in consideration that the fair association is itself acting liberally in giving the entertainment."

[12] In Winona Lumber Co. v. Church et

al., 6 S. D. 498, 62 N. W. 107, the appellant sold certain lumber to the Watertown Trotting Association, of which Charles G. Church was the president. Judgment was rendered that the lumber company take nothing, and on appeal the trial court was reversed and the case remanded. Kellam, J., speaking for the Supreme Court, said: "Complaint shows that these defendants were the general officers of an incorporated association, under the name of the Watertown Trotting Association. Its purpose and object is disclosed only as suggested by its name. · It is further stated that with the knowledge, approval, and sanction 'of these defendants, as its general managing officers, the association purchased the materials named in the complaint from the plaintiff, and that·such materials were used in the construction of buildings for such association. The association itself was the nominal or theoretical principal, of which these defendants were the officers and agents, but the nominal principal had no legal existence. As said by Judge Seevers, in Lewis v. Tilton, 64 Iowa, 220, 19 N. W. 911, 52 Am. Rep. 436, it was a myth. The members of the association, as a matter of convenience, transacted their business connected with this enterprise under an assumed associate name. The acts of the association, it not being a legally responsible body, were the acts of its members, who instigated and sanctioned the same. They made the purchase in the name of a fictitious principal. As a matter of law, the plaintiff, in giving credit to the associate name, gave credit to the parties who adopted and operated under such name. To hold otherwise would defeat the plain requirement of justice. It is not sought in this case to impose liability upon any except those who were actively responsible for the purchase. Possibly others besides those named as defendants may also be liable in this case, but there is nothing in the complaint so showing. It does appear that the defendants named instigated and sanctioned the purchase, and they are liable on the ground that one who, as the agent, assumes to represent a principal who has no legal existence or status is himself liable. Meachem on Agency, § 557. The principle which seems to us controlling in this case is tersely stated in Lewis v. Tilton, supra: 'But it is said these defendants did not contract. They certainly represented that they had a principal for whom they had authority to contract. They, for and in behalf of an alleged principal, contracted that such principal would do and perform certain things. As we have said, there is no principal, and it seems to us the defendants should be held liable, and that it is immaterial whether they be held liable because they held themselves out as agents for a principal that had no existence or on the ground that they must, under the contract, be regarded as principals, for the simple reason that there is no other principal in existence.' That members of

an incorporated association, having no legal status, are personally liable, independent of the question of partnership, on contracts which they have assented to or assisted to make in its name is fully declared in Lewis v. Tilton, supra; Davison v. Holden [55 Conn. 103] 10 Atl. 515 [3 Am. St. Rep. 40]; Herod v. Rodman, 16 Ind. 241; Ash v. Guie, 97 Pa. 493 [39 Am. Rep. 818]. The same doctrine was distinctly recognized, though not so definitely stated, and applied in Ray v. Powers, 134 Mass. 24; Sizer v. Daniels, 66 Barb. (N. Y.) 432; Fredendall v. Taylor, 23 Wis. 538 [99 Am. Dec. 203]; and again in 26 Wis. 286."

In Bennett v. Lathrop, 71 Conn. 613, 42 Atl. 634, 71 Am. St. Rep. 222, it is said: "The members of a voluntary association are * * * liable for an indebtedness * * * for which it was organized, during the time of their membership, although they did not agree to become, nor did they hold themselves out as, partners, or as personally responsible, and although the creditors gave credit to the associate name."

[13] In contracting with the Texas Construction Company, the officers and directors of the guarantee committee were certainly endeavoring to carry out the very purpose which the guarantee committee had bound themselves to have performed, and it comes too late at this time, when the work has been done, the money expended by the officers elected by themselves, to insist that they are not responsible because the appellees failed to show that appellants were present and actually participated as members of the committee when the Texas Construction Company was substituted for Kennedy in the original contract. The Danforth Trotting Park Association had been organized as a volunteer association, with the ultimate purpose of organizing a corporation, and before the organization of the corporation the treasurer executed a note. In Kierstead v. Bennett, 93 Me. 328, 45 Atl. 42, it was held that Bennett, the treasurer of such an association, giving his note in his official capacity for money which was used in promoting the purposes of the association, thereby bound all of his associates, including himself. The court said: "Now the defendant claims that the note sued on must be held to be the note of the Danforth Trotting Park Association, and that, when the defendant promised in his official capacity, he promised for and in behalf of the association. Assume it to be so, then he promised for and on behalf of all the associates, including himself. That being so, all the members, himself included, are liable upon the promise which he made. All are copromisors. He is sued; the others are not; but the nonjoinder of a copromisor is available only by plea in abatement, hence it follows· that, whichever view may be taken of the note, the defendant is liable." Otto v. Journeyman Tailors' Union, 75 Cal. 308, 17 Pac. 217, 7 Am. St. Rep. 161; Jenne

v. Matlack (Ky.) 41 S. W. 11; McKenney v. Bowie, 94 Me. 397, 47 Atl. 918; Giles v. Ortman, 11 Kan. 59; Pelton v. Place, 71 Vt. 430, 46 Atl. 63; Hess v. Werts, 4 Serg. & R. (Pa.) 356; Ferris v. Thaw, 72 Mo. 446; Dow v. Moore, 47 N. H. 419.

Motion overruled.